ROBINSON v EMMET COUNTY ROAD COMMISSION

OPINION OF THE COURT

1. HIGHWAYS—ACTION FOR DAMAGES—PARTIES—TRUNKLINE HIGH-
   WAYS—COUNTIES—STATUTES.

   An action for damages resulting from the improper maintenance
   of a state trunkline highway by a county undertaking such
   maintenance by contract with the state should be brought
   against the state (MCLA 691.1402; MSA 3.996[102]).

2. CONSTITUTIONAL LAW—HIGHWAYS—STATE HIGHWAY COMMISSION
   —JURISDICTION—TRUNKLINE HIGHWAYS.

   The state highway commission has jurisdiction and control over
   all state trunkline highways (Const 1963, art 5, § 28).

3. HIGHWAYS—COSTS OF MAINTENANCE—LIABILITIES—TRUNKLINE
   HIGHWAYS—COUNTIES—STATUTES.

   The cost of constructing, improving and maintaining state trunk-
   line highways, after January 1, 1960, shall be met entirely by
   the state, and the counties, townships and incorporated cities
   and villages shall thereafter be relieved of all expenses and

REFERENCES FOR POINTS IN HEADNOTES

[1, 5, 6] 39 Am Jur 2d, Highways, Streets, and Bridges § 64.
   64 Am Jur 2d, Public Works and Contracts § 132.
[2, 7] 39 Am Jur 2d, Highways, Streets, and Bridges § 201.
   Jurisdiction and power in respect of street or road which is part of,
   or touches upon, a state or Federal highway. 144 ALR 307.
[3, 4] 39 Am Jur 2d, Highways, Streets, and Bridges §§ 122–129.
[8, 10] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 65
   et seq.
   72 Am Jur 2d, States § 99 et seq.
[9] 39 Am Jur 2d, Highways, Streets, and Bridges §§ 361, 387.
[11, 12, 24] 47 Am Jur 2d, Judgment § 1158.
   73 Am Jur 2d, Summary Judgment § 26.
[13–15, 17, 25, 26] 28 Am Jur 2d, Estoppel and Waiver § 168 et seq.
[16] 61 Am Jur 2d, Pleading §§ 152, 153.
[18, 21] 39 Am Jur 2d, Highways, Streets, and Bridges §§ 270–272.
[19, 20] 39 Am Jur 2d, Highways, Streets, and Bridges § 340.
[22] 40 Am Jur 2d, Highways, Streets, and Bridges § 581.
[23] 51 Am Jur 2d, Limitation of Actions § 311.

legal liabilities in connection therewith (MCLA 250.61; MSA 9.901).

4. HIGHWAYS—MAINTENANCE—TRUNKLINE HIGHWAYS—COUNTIES—LIABILITIES—STATUTES.

The statute regarding the cost of constructing, improving and maintaining state trunkline highways relieves a county undertaking such maintenance under contract with the state of all legal obligations and liabilities with respect to such maintenance (MCLA 250.61; MSA 9.901).

5. HIGHWAYS—MAINTENANCE CONTRACTS—TRUNKLINE HIGHWAYS—LIABILITIES—STATUTES.

A county is free to contract with the state in order to perform the state's obligations regarding the maintenance of a state trunkline highway and at the same time be free of liability for its negligent acts (MCLA 250.61; MSA 9.901).

6. HIGHWAYS—TRUNKLINE HIGHWAYS—JURISDICTION—MAINTENANCE AGREEMENTS—STATE HIGHWAY COMMISSION—NEGLIGENCE.

The state highway commission does not divest itself of jurisdiction over state trunkline highways when the state contracts with other governmental units to maintain such highways; therefore, possible negligent acts of the other governmental units in maintaining the highways will not render such units liable.

7. HIGHWAYS—DUTY OF CARE—TRUNKLINE HIGHWAYS—MAINTENANCE—STATE HIGHWAY COMMISSION—JURISDICTION—STATUTES.

A county has no duty to act with due care in the maintenance of a state trunkline highway under a contract with the state highway commission where the highway commission by statute retains jurisdiction over such highways (Const 1963, art 5, § 28, MCLA 250.61; MSA 9.901).

8. MUNICIPAL CORPORATIONS—PERFORMING GOVERNMENTAL FUNCTIONS—INCIDENTAL INCOME—IMMUNITY FROM LIABILITY.

A municipal corporation does not lose its immunity from liability merely because it derives an income from the performance of a governmental function so long as the income was only incidental to the main purpose of functioning as a governmental agency.

9. MUNICIPAL CORPORATIONS—NEGLIGENT ACTS—VOLUNTARY COMMERCIAL ACTS—VOLUNTARY ACTS FOR PROFIT—LIABILITIES—HIGHWAY MAINTENANCE.

A municipality may be held to respond in damages for a negli-

gent act in furtherance of a voluntary activity undertaken for its own profit and commercial in character; the maintenance of a highway, however, is not such an act.

10. TORTS—GOVERNMENTAL IMMUNITY—ACCELERATED JUDGMENT—COURT RULES.

The defense of governmental immunity is one which must be raised by a motion for accelerated judgment because it represents a special disability which avoids an otherwise valid cause of action and, therefore, should be heard preliminarily to determine whether a trial on the merits will be necessary (GCR 1963, 116).

11. MOTIONS—SUMMARY JUDGMENT—COURT RULES.

A motion for summary judgment is a device designed to find whether or not there exists any dispute as to law or fact and such motion contemplates a ruling on the merits in situations where there are no disputed issues of fact (GCR 1963, 117).

12. MOTIONS—ACCELERATED JUDGMENTS—SPECIAL DEFENSES—COURT RULES.

A motion for accelerated judgment tests certain special defenses which may dispose of the case and should be heard preliminarily to determine whether a trial on the merits will be necessary, even though factual issues may have to be resolved in order to rule on the motion (GCR 1963, 116).

13. MOTIONS—INCORRECTLY LABELED MOTIONS—PREJUDICE.

An incorrectly labeled motion is considered as if correctly labeled, absent prejudice to the other party.

14. MOTIONS—INCORRECTLY LABELED MOTIONS—PREJUDICE.

An incorrectly labeled motion must be treated as labeled if treating it as something other than what it purports to be would cause prejudice.

15. PLEADING—AFFIRMATIVE DEFENSES—WAIVER OF DEFENSES—COURT RULES.

An affirmative defense must be pled specially or it will be waived (GCR 1963, 111.3).

16. PLEADING—AFFIRMATIVE DEFENSES—CAUSE OF ACTION.

An affirmative defense is one that concedes that the plaintiff once had a cause of action but such action no longer exists.

17. PLEADING—AMENDMENT—WAIVER—DISCRETION—COURT RULES.

It is within a trial court's discretion to allow the amendment of pleadings in order to cure what would be a waiver of an affirmative defense (GCR 1963, 111, 118).

18. Municipal Corporations—Highways—Torts—Affirmative Defenses—Counties—Pleading.

It is incumbent upon a county to properly raise an affirmative defense by pleading both the appropriate statute and the facts which indicate that the statute is applicable as a special defense which thereby prevents recovery against the county where the county seeks to invoke the statute as an affirmative defense in an action for damages resulting from the improper maintenance of a state trunkline highway.

19. Highways—Nature of Highways—Changes.

The nature of a road may change through the course of time.

20. Highways—Nature of Highways—Judicial Notice—Question of Fact.

The nature of a road may be subject to proof by judicial notice, however, the basic proposition remains that this is a fact question.

21. Municipal Corporations—Highways—Torts—Affirmative Defenses—Immunity—Nature of Highways—Question of Fact —Counties—Liability—Statutes.

The failure of a county to raise as a question of fact the nature of the road involved in a lawsuit for damages resulting from the improper maintenance of the road by the county is fatal to the county's defense that it is relieved of liability for such maintenance by a special statute which pertains to roads of such nature (MCLA 250.61; MSA 9.901).

22. Estoppel—Counties—Amendment to Answers—Highways—Jurisdiction—Limitation of Actions—Excuse of Principal.

A county is estopped from raising as a defense, by an amendment to its already filed answer, the fact that an allegedly defective highway was by special statute not under the county's jurisdiction where the failure to promptly assert such a defense excused the principal (the state) because of the running of the statute of limitations against the state.

Dissent by R. B. Burns, P. J.

23. Limitation of Actions—Prejudice—Proper Parties—Technically Improper Motions—Notice.

*A defendant bears no responsibility for any prejudice suffered by a plaintiff who allows the statute of limitations to run against the proper party, who is not a party to the suit, where the plaintiff was put on notice as to who the proper party was by a*

*technically improper motion brought by the defendant three
months before the statute had run.*

24. COURTS—ORDERS—SUMMARY JUDGMENT—ACCELERATED JUDGMENT
—TECHNICALLY IMPROPER ORDERS.

*The technical impropriety of the form of an order granting
summary judgment, where accelerated judgment would be
proper, is not reversible error.*

25. MOTIONS—INCORRECTLY LABELED MOTIONS—PREJUDICE.

*An incorrectly labeled motion is considered as if correctly labeled,
absent prejudice to the other party.*

26. PLEADING—AMENDMENT OF ANSWERS—WAIVER OF DEFENSES—
COURT RULES.

*A court should freely allow amendment of an answer to prevent
the waiver of a defense (GCR 1963, 111, 118).*

Appeal from Emmet, Martin B. Breighner, J.
Submitted October 5, 1976, at Grand Rapids.
(Docket No. 23519.) Decided December 9, 1976.
Leave to appeal applied for.

Complaint by Joyce E. Robinson, administratrix
of the estates of Linda J. Robinson, deceased, and
Brian C. Robinson, deceased, against the Emmet
County Road Commission to recover damages for
deaths which occurred in an automobile accident.
Defendant's motion for summary judgment
granted. Plaintiff appeals. Reversed and remanded.

*Rensberry & Foster, P. C.,* for plaintiff.

*Cholette, Perkins & Buchanan* (by *Robert A.
Benson),* for defendant.

Before: R. B. BURNS, P. J., and D. E. HOLBROOK
and T. M. BURNS, JJ.

D. E. HOLBROOK, J. Plaintiff appeals as of right
from the trial court's grant of defendant's motion
for summary judgment. The litigation arose after a
tragic automobile accident which took the lives of

two young people. Plaintiff maintains that defendant's negligent maintenance of the highway where the accident occurred caused the accident. Defendant maintains that the state was responsible for any liability arising out of the maintenance of said highway and that furthermore the county was expressly excused by statute, MCLA 250.61; MSA 9.901.

The underlying facts are undisputed. On January 3, 1971 two young people, brother and sister, were killed in an automobile accident on M-131, just east of Harbor Springs. On that date, the defendant, Emmet County Road Commission, was by contract with the State of Michigan, maintaining the road in question. Plaintiff contends that during a snow storm which covered the roadway with snow, the automobile driven by Linda Robinson struck a chuck hole causing the car to go out of control and into the oncoming lane where it was struck by another vehicle.

The procedural background in the instant case is crucial and will be recited in detail. On July 27, 1971 the plaintiff (mother) in her capacity as administratrix of the two children's estates filed this lawsuit. On August 10, 1971 defendant appeared, answered the complaint, and brought a motion for summary judgment on the basis that the defect was off the traveled portion of the highway and therefore the county had no duty to keep it in proper repair. This motion was denied.[1] In its answer, defendant reserved the right to file affirmative defenses. On March 21, 1972 defendant did file an affirmative defense, the contributory negligence of the deceased.

The case proceeded to discovery with interroga-

---

[1] On the basis of *Johnson v State of Michigan,* 32 Mich App 37; 188 NW2d 33 (1971).

tories submitted by both sides. One deposition was taken and finally on August 11, 1972 a pretrial conference was held.[2] Both sides declared their satisfaction with the pleadings and their readiness for trial. However, on October 5, 1972 defendant filed another motion for summary judgment, on the basis that plaintiff had failed to state a claim upon which relief can be granted. GCR 1963, 117.1, 117.2(1). The motion indicated that it was based on MCLA 250.61; MSA 9.901. No affidavit was attached indicating precisely what defense was relied on, and accordingly the motion was denied. On January 9, 1973 the motion was again filed with the proper affidavit setting forth the claim that the highway in question was a state trunkline highway and that by virtue of MCLA 250.61; MSA 9.901, the county road commission had no responsibility therefor. On January 9, 1973 the statute of limitations had already run against the State of Michigan, MCLA 691.1411(2); MSA 3.996(111)(2). On September 30, 1974 a new trial judge, who had succeeded the original judge who had resigned, denied the defendant's motion on the basis that it did not conform with the court rule. A third motion on the issue was then filed on November 21, 1974, with a new affidavit, and that motion was argued by counsel and granted by the trial court on March 6, 1975.

Plaintiff should have brought an action against the state for improper maintenance of the highway in question. MCLA 691.1402; MSA 3.996(102), provides in relevant part as follows:

"Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for

2 GCR 1963, 301.

public travel. Any person sustaining bodily injury or damage to his property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him from such governmental agency."

The problem of "jurisdiction" over state trunkline highways is clarified in Const 1963, art 5, § 28, which states:

"There is hereby established a state highway commission, which shall administer the state highway department and have jurisdiction and control over all state trunkline highways and appurtenant facilities, and such other public works of the state, as provided by law."

The final act which provides for recovery against the state is MCLA 250.61; MSA 9.901, which provides in part:

"On and after January 1, 1960, the cost of constructing, improving and maintaining trunk line highways shall be met entirely by the state, and the counties, townships and incorporated cities and villages shall thereafter be relieved of all expenses and legal liabilities in connection therewith."

Although plaintiff does attempt to argue as to the nature of the highway in question, the trial court found it was a state trunkline highway. There has been no showing of any reason to upset this finding and we decline to do so.

Plaintiff could have maintained an action against the state. Instead, plaintiff brought this action against the county who had contracted to maintain the highway. MCLA 250.61; MSA 9.901 appears to relieve the county of all legal obligations and liabilities with respect to maintenance of

this state trunkline highway. See *Bennett v City of Lansing,* 52 Mich App 289; 217 NW2d 54 (1974), *Moyer v Wayne County Road Commission,* 52 Mich App 285; 217 NW2d 53 (1974). These decisions interpreting this statute are somewhat troubling. A county is apparently free to contract with the state in order to perform the state's obligations and at the same time to be free of liability for its negligent acts. This removes the county from any requirement of accounting to those injured by its negligent acts while undergoing a contracted-for operation. However, our Court has held the county is, by statute, excused from any liability.

"It would not, therefore, seem logical that the Legislature would relieve all counties of legal liabilities for maintaining trunkline highways in one section of a statute, MCLA 250.61; MSA 9.901, *supra,* and then in the very next section, MCLA 250.62; MSA 9.902, *supra,* give the State Highway Commission the power to contract with the county for the maintenance of the trunkline highway without intending that the county would not be liable for negligent maintenance.

"We hold that the State Highway Commission does not divest itself of jurisdiction over state trunkline highways by the maintenance agreements involved. Therefore, possible negligent acts of other governmental units in maintaining state trunkline highways will not render such units liable." (Footnote omitted.) *Moyer, supra,* at 287–288; 217 NW2d at 54.

In another decision decided the same day, our Court explained the apparent rationale:

"This, of course, does not leave plaintiffs without a remedy, since they can continue their action against the proper defendant, the State Highway Department. While at first blush it seems odd that the state must answer for the omission of a local unit of government, it must be remembered that if local units of govern-

ment were not absolved of liability with respect to maintenance of state trunkline highways, local units of government would be less willing to undertake the responsibility of said maintenance on behalf of the state." *Bennett, supra,* at 295–296; 217 NW2d at 58.

*Bennett* is particularly applicable since, as here, the case was argued on the basis of governmental immunity. The Court explained the nature of the cause of action as follows:

"By constitutional mandate the State Highway Commission was given 'jurisdiction and control over all state trunkline highways'. We perceive that the term jurisdiction as used in the statute must logically be read to be coextensive with the same term used in Const. 1963, art 5, § 28. Therefore, the state trunkline highways here in question are within the jurisdiction of the State Highway Department and not the municipal corporation. It has been held that the provisions of 1964 PA 170 must be strictly construed. *Johnson v Michigan,* 32 Mich App 37; 188 NW2d 33 (1971). Given that rule of construction, since the highways were not within the jurisdiction of the defendant municipal corporation, the § 2 exception does not apply, thus the § 7 governmental immunity is available." *Bennett, supra,* at 294–295; 217 NW2d at 57–58.

In *Bennett* the action was brought against the City of Lansing. The Court concluded that since the highways were not within the jurisdiction of the defendant municipal corporation, the § 2 (MCLA 619.1402; MSA 3.996[102]), exception did not apply, and therefore governmental immunity, by virtue of § 7 (MCLA 691.1407; MSA 3.996[107]), was available to the city as a defense.

A compelling argument can be made that the statute merely grants immunity to the county for its failure to act. That is, the county has no duty to maintain state trunkline highways. However, it

can be argued that once the county by contract has undertaken to maintain the roads, in spite of its statutory protection, a new duty is then created which obligates the county to act with due care. See Prosser, Torts (4th ed), § 56, pp 338–350 (3d ed, § 54, pp 334–346). This argument has been rejected in Michigan. *Bennett, supra, Moyer, supra.* We do recognize, however, that this argument has particular force when the undertaking is coupled with a contractual obligation to maintain the roads in return for a bargained-for benefit. The receipt of consideration to undertake this task while at the same time the county is excused from all liability is somewhat disturbing. Nevertheless, the Legislature has provided that the plaintiff's remedy is an action against the state. MCLA 250.61; MSA 9.901.

Plaintiff also maintains that the county is, in reality, an independent contractor. This same argument was made many years ago and rejected. *Johnson v Board of County Road Commissioners of Ontonagon County,* 253 Mich 465; 235 NW 221 (1931). The Court held that a municipal corporation does not lose its immunity from liability merely because it derived an income therefrom, so long as the income was only incidental to the main purpose of functioning as a government agency. The Court did note that a municipality may be held to respond in damages for a negligent act in furtherance of a voluntary activity undertaken for its own profit and commercial in character. 253 Mich at 471; 235 NW at 223. The Court held that maintenance of a highway was not such an act. The Court concluded:

"We find nothing in this record indicating that defendant was engaged in an enterprise which inured especially to its own corporate benefit. Instead, all of its activities had to do with the construction or mainte-

nance of the public highways, which is the performance of a public duty. * * *

"We are unable to find any fact or circumstance in this record which distinguishes it from the *Gunther Case [Gunther v Board of County Road Commissioners of Cheboygan County*, 225 Mich 619; 196 NW 386 (1923)] wherein it was held that a board of county road commissioners in performing maintenance work on a trunk line highway was performing a governmental function and that therefore the defendant board was not 'liable for injuries caused by the negligent operation of a truck by one of its agents, in the absence of a statute creating such liability.' " *Johnson, supra,* at 471, 472; 235 NW at 223, 224.

While there may be circumstances where the profit motive and character of maintenance of a highway might indicate that the undertaking was outside the protection of governmental immunity, this is not such a case. Plaintiff has failed to allege such circumstances which would illustrate the existence of a proprietary function in the instant case, in light of the principles announced years ago in *Johnson.* Although we are somewhat unhappy with any situation which results in a defendant's excusal from all liability for its negligent acts, particularly where the acts occurred during the performance of services under a contract for consideration, this Court cannot change this longstanding law.

Therefore, we are reluctantly constrained to find that the defendant herein had a valid defense. However, this defense was provided for by statute. Therefore, we must determine if it was properly asserted.

In the instant case, we must decide whether defendant, relying on MCLA 250.61; MSA 9.901, properly raised this statute by its motion for sum-

mary judgment. GCR 1963, 117.2(1). Plaintiff contends that a motion for accelerated judgment, GCR 1963, 116, was the proper method to raise this issue.

Our first inclination is to rely on *Moyer, supra,* and *Bennett, supra,* to determine what the proper procedural avenue is in the instant case. However, in *Moyer* the Court affirmed the defendant's motion for accelerated judgment, whereas in *Bennett* the Court affirmed the grant of summary judgment. Also, in both cases, this issue was not discussed by the Court. Therefore, we must decide on our own what the proper basis for a motion is under these circumstances.

The trial court granted defendant's motion for summary judgment, apparently on the basis of GCR 1963, 117.2(1).[3] Plaintiff maintains that because MCLA 250.61; MSA 9.901, is essentially an immunity provision, *Popielarski v City of Warren,* 380 Mich 651; 158 NW2d 491 (1968), it must be raised by a motion for accelerated judgment under GCR 1963, 116.1(5).[4] Defendant responds by denying the above and asserting that MCLA 250.61; MSA 9.901, is a provision which deletes the duty element of a negligence cause of action and therefore must be asserted pursuant to GCR 1963, 117.2(1). See, *Pompey v General Motors Corp,* 385 Mich 537; 189 NW2d 243 (1971).

The defense of governmental immunity is embodied in 1964 PA 170, MCLA 691.1401, *et seq.;*

[3] GCR 1963, 117.2(1) provides:

"[T]he opposing party has failed to state a claim upon which relief can be granted."

[4] GCR 1963, 116.1(5) provides:

"[T]he claim is barred because of release, payment, prior judgment, statute of limitations, statute of frauds, infancy, or other disability of the moving party, or assignment or other disposition of the claim before commencement of the action."

MSA 3.996(101), *et seq.*[5] When this act was enacted, it repealed many of the underlying provisions formerly contained in MCLA 250.61; MSA 9.901. However, it did not repeal 1909 PA 283, chapter 4, § 21, nor did it specifically repeal MCLA 250.61; MSA 9.901. Had the Legislature intended to renounce the continuing validity of this act, it could have done so. Clearly this act remains as part of the governmental immunity of this state.

The defense of governmental immunity is one which must be raised by a motion for accelerated judgment, under GCR 1963, 116.1(5), because it represents a special disability which avoids an otherwise valid cause of action. See *Lockaby v Wayne County,* 63 Mich App 185; 234 NW2d 444 (1975), *Bloss v Williams,* 15 Mich App 228; 166 NW2d 520 (1968). The two rules have been distinguished.

"The motion for accelerated judgment under Rule 116 is distinguished from the motion for summary judgment under Rule 117 by several features. Primarily the motion for summary judgment contemplates a ruling on the merits in situations where there are no disputed issues of fact, whereas a motion for accelerated judgment under Rule 116 tests certain special defenses which may dispose of the case and, therefore, should be heard preliminarily to determine whether a trial on the merits will be necessary, even though factual issues may have to be resolved in order to rule upon the

---

[5] 1964 PA 170 states its purpose as follows:

"AN ACT to make uniform the liability of municipal corporations, political subdivisions, and the state, its agencies and departments, when engaged in a governmental function, for injuries to property and persons caused by negligence; to define and limit such liability; to define and limit the liability of the state when engaged in a proprietary function; to authorize the purchase of liability insurance to protect against loss arising out of such liability; to provide for defending certain claims made against public officers and paying damages sought or awarded against them; and to repeal certain acts and parts of acts."

motion."[6] 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 336.

It is clear there was an underlying dispute, an otherwise viable claim, which formed the basis for this action. However, the Legislature provided for a special defense for the county, imposing liability only on the state. Therefore, this is a "defense" which is properly raised by a motion for accelerated judgment. See, *Buddy v Department of Natural Resources,* 59 Mich App 598; 229 NW2d 865 (1975).

An incorrectly labeled motion is considered as if correctly labeled, absent prejudice to the other party. *Birch Run Nursery v Jemal,* 52 Mich App 23; 216 NW2d 488 (1974), *modified* 393 Mich 775; 224 NW2d 282 (1974). Conversely, if treating the motion as something other than what it purports to be would cause prejudice it must be treated as labeled. Therefore, if there is prejudice we must treat this as error demanding reversal. Since the statute of limitations, MCLA 691.1411(2); MSA 3.996(111)(2), has run against the state we find sufficient prejudice to warrant reversal.

We find that the proper motion to raise this statutory defense was GCR 1963, 116.1(5). A motion for accelerated judgment under this court rule tests certain special defenses which may dispose of the case and should be heard preliminarily to

---

[6] *See,* 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 353:

"(1) In General. Rule 116 should be distinguished from Rule 117. The former rule is a means by which certain disputed issues of fact or law can be *adjudicated* at an early stage with the possibility of ending the case and avoiding an expensive trial in the ordinary course. Rule 117, on the other hand, is a device to find out whether or not there *exists any dispute* as to law or fact, with adjudication of established issues a secondary matter. Rule 117 is based upon both the Michigan and Federal summary judgment rules. In many respects it is more inclusive than either." (Emphasis in original.)

determine whether a trial on the merits will be necessary, even though factual issues may have to be resolved in order to rule on the motion.[7] A motion for accelerated judgment provides a method by which certain disputed issues can be adjudicated at an early stage with a possibility of ending the case and avoiding an expensive trial.[8] Rule 117, on the other hand, is a device designed to find whether or not there exists any dispute as to law or fact. 1 Honigman & Hawkins, Michigan Court Rules Annotated, p 353. Obviously the time factor under a Rule 117 motion is not crucial since an ultimate finding by the court will show that there was no underlying valid cause of action. An accelerated judgment, however, is based on a special defense and, in essence, results in an early adjudication. Prompt resolution of this motion, and a corresponding saving of time and effort, is the underlying purpose for the existence of this motion.

The rule has been construed as having been designed to secure just, speedy, and inexpensive determination of various issues. *Manufacturers Construction Co v Covenant Investment Co,* 43 Mich App 123; 204 NW2d 54 (1972), *lv den,* 388 Mich 810 (1972). See also *Great Lakes Restaurants, Inc v Rumery Construction Co, Inc,* 23 Mich App 501; 179 NW2d 36 (1970). Obviously, had defendant complied with the spirit of the rules and made a proper and prompt motion for accelerated

[7] In this instance, one possible disputed fact was the nature of the road in question. As noted earlier, plaintiff apparently disputed the nature of the highway. We feel the trial court properly found it was a state trunkline highway.

[8] GCR 1963, 116 provides in part:

"In a party's first responsive pleading, or by motion filed not later than his first responsive pleading, a party may demand that service of process be quashed or that judgment be entered dismissing 1 or more claims asserted against him."

judgment pursuant to GCR 1963, 116, plaintiff could have filed a proper action against the state. Plaintiff's action was filed in July of 1971. In August 1971 defendant answered and brought a motion for summary judgment on the basis that the defect was not on the road itself and, therefore, the county had no duty to repair. In March of 1972 defendant filed an affirmative defense, contributory negligence. The parties continued to prepare for trial taking interrogatories and depositions and holding a pretrial conference. Defendant did not move for summary judgment on the basis of MCLA 250.61; MSA 9.901, until October of 1972. By the time this motion was properly filed with supporting affidavits, the statute of limitations against the state had run.

Because this case will be remanded, we deem it necessary to discuss the waiver question raised by our holding that this statutory shifting of liability is a special defense which must be raised by a motion for accelerated judgment pursuant to GCR 1963, 116. It has long been the rule in Michigan that affirmative defenses must be pled specially. *Wachsmuth v Merchants National Bank,* 96 Mich 426; 56 NW 9 (1893).[9] This rule has been carried over in the present court rules, GCR 1963, 111.3. The rationale has been aptly stated in 61 Am Jur 2d, Pleading, § 152, p 580:

"Since the plaintiff must apprise the defendant in the beginning as to what he relies upon for a recovery, it is only right that the defendant should be required also to inform the plaintiff of any special or affirmative defenses he expects to make by pleading the facts constituting such defenses."

---

[9] *See* 2 Callaghan's Michigan Pleading & Practice (2d ed), § 24.18, pp 424–425, and 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 201.

As we said earlier, a motion for accelerated judgment is designed to provide a method by which certain disputed facts raising the special defense can be adjudicated prior to trial to allow prompt resolution of the dispute. An affirmative defense is one that concedes that the plaintiff once had a cause of action but such action no longer exists. 61 Am Jur 2d, *supra.*

In *Manufacturers Construction Co, supra,* the disputed defense was lack of capacity to sue based upon plaintiff's failure to file an annual report and pay franchise fees pursuant to MCLA 450.87; MSA 21.87. There, the Court held that this was a special defense which was subject to waiver. The Court did hold that GCR 1963, 111, must be compared with the provisions of GCR 1963, 118, allowing amendment of pleadings by leave of the court. The Court held that these rules were interrelated and allowed amendment to cure what would be a waiver. See also *Zenith Radio Corp v Hazeltine Research, Inc,* 401 US 321; 91 S Ct 795; 28 L Ed 2d 77 (1971), *reh den,* 401 US 1015; 91 S Ct 1247; 28 L Ed 2d 552 (1971), which similarly construed the Federal rules to allow an amendment to cure a waiver of a defense. The acceptance or rejection of a proposed amendment falls within the trial court's discretion. *Manufacturers Construction Co, supra.*

It is clear in the instant case that without this statute the county road commission which contracted to repair the road would have been liable for its negligent acts which proximately caused injury to someone using that road. In addition, in Michigan had the road been under the jurisdiction of the county, and not the state, the county would have been liable for its negligent acts which proximately caused injury to a foreseeable plaintiff. See *Mullins v Wayne County,* 16 Mich App 365; 168

NW2d 246 (1969), *lv den,* 382 Mich 791 (1969), *Weckler v Berrien County Road Commission,* 55 Mich App 7; 222 NW2d 9 (1974). We rule it was incumbent upon the defendant in the instant case to properly raise such a defense by pleading both the appropriate statute and the facts which indicated that the statute was applicable as a special defense which prevented recovery against this defendant. Failure to plead such facts could be a waiver pursuant to GCR 1963, 111.3.

The nature of the road involved in this dispute was a question of fact. MCLA 247.651, *et seq.;* MSA 9.1097(1), *et seq.,* does establish the state trunkline highway system under the control of the state highway commission. Nevertheless, this act does provide for revision of such classifications and for additions to and deletions from the various classifications involved in a state trunkline highway system. One thing the statute makes clear is that the nature of a road may change through the course of time. A question of fact is involved and the proof of that fact is essential to the county's defense. Merely because such fact may be subject to proof by judicial notice[10] does not change the

---

[10] *See, generally,* McCormick, Evidence (2d ed), §§ 328–335, pp 757–782; 9 Wigmore on Evidence, §§ 2565–2583, pp 531–585; Am Jur 2d, New Topic Service, Federal Rules of Evidence, § 201, pp 20–24.

The Federal rule, as well as the modern trend, is to allow judicial notice as to matters of common knowledge and as to matters of ready verification. Also under the Federal rules, judicial notice may be either discretionary or mandatory. Federal Rules of Evidence, *supra,* § 201. Also the modern trend and the Federal rules allow evidence to contradict or rebut facts which were judicially noticed. *See, Safeway Stores, Inc v Federal Trade Comm,* 366 F2d 795 (CA 9, 1966), *cert den* 386 US 932; 87 S Ct 954; 17 L Ed 2d 805 (1967). Anno., *Reception of evidence to contradict or rebut matters judicially noticed,* 45 ALR2d 1169. It has been further asserted that in the interest of fairness a judge must notify the parties of his intent to take judicial notice and afford them an opportunity to present information bearing upon the propriety of noticing the fact. McCormick, *supra,* at 771. In a discussion of judicial notice it was observed that:

"Whereas in the typical vehicular accident case the well-known

basic proposition that this is indeed a fact question. Failure of defendant to raise this fact will be fatal to this defense and could result in a finding of liability as to the county. Furthermore, there are sufficient elements of estoppel in the instant case to guide the trial court in its decision as to a denial of an amendment of the pleadings, GCR 1963, 118. In the instant case, defendant failed to raise this defense properly for approximately two years. In addition, defendant had earlier brought a motion for summary judgment based on lack of duty to maintain the shoulder of the road in question, and had filed an answer and later an affirmative defense of contributory negligence. In its earlier motion for summary judgment, the defendant even misled the plaintiff further by stating in his brief in support of a motion for summary judgment:

"(The alleged defect in this case is 3 inches. The *Johnson* case *[Johnson v State of Michigan,* 32 Mich App 37; 188 NW2d 33 (1971)] also involved a state trunkline, four lane divided highway, whereas the instant case involves what is essentially a local road, but which is also designated a state scenic route.)"

In the instant case, the county, by contracting to maintain the road in question, which was under the jurisdiction of the state, was in effect the agent of the state authorized to maintain the road. Its liability was excused by the special statute. Proof of facts by the defendant, showing that the highway in question was not under its jurisdiction by

character of a street can be dealt with informally as background information which helps everyone visualize the scene, the question becomes a formal one to be dealt with as part of the doctrine of judicial notice if the precise character of the street becomes an adjudicative fact in the case being tried." (Footnote omitted.) McCormick, *supra,* at 762.

statute, placed liability on the state only. Failure
to assert promptly such a defense, which in effect
also excused the principal (the state) because of
the running of the statute of limitations as against
the state would estop the county from raising such
a defense by amendment to its already filed an-
swer. In a similar case, an Ohio court did find an
estoppel. *Smith v Brush-Moore Newspapers, Inc,*
23 Ohio App 2d 16; 52 Ohio Ops 2d 9; 260 NE2d
622 (1970), *aff'd* 27 Ohio St 2d 111; 56 Ohio Ops 2d
62; 271 NE2d 846 (1971). See also Anno., *Fraud,
misrepresentation, or deception as estopping reli-
ance on statute of limitations,* 43 ALR3d 429. In
*Smith,* the plaintiff brought a personal injury
action against the defendant named as Brush-
Moore Newspapers, Inc, doing business as WONE
Radio Station. After the statute of limitations had
run, Brush-Moore Newspapers, Inc. filed a motion
for summary judgment based on the fact that it
was not the proper party. The proper party was a
corporation entitled WONE, Inc. The court found
an estoppel in view of evidence that the two
corporations had common directors, several com-
mon officers, the same attorney, the same insur-
ance, and furthermore, evidence tended to indicate
that plaintiff was misled by correspondence with
the common insurer as to the separate identity of
the parties. In that case, the court held that the
proper defendant would be barred from asserting
the statute of limitations. We feel that in the
instant case the defendant should be barred from
asserting in his answer facts which would entitle it
to the protection of this special defense.

Summarizing briefly, we hold that according to
statute, a county is excused from liability for the
maintenance of a state trunkline highway. How-
ever, in the instant case, the defendant raised this

statutory defense and the facts showing the nature
of the highway improperly by summary judgment
pursuant to GCR 1963, 117, instead of by a motion
for accelerated judgment pursuant to GCR 1963,
116. The statutory defense requires proof that the
road in question was, in fact, under the jurisdic-
tion of the state and not the county. The defend-
ant herein earlier appeared, answered, and moved
for summary judgment and later raised an affirma-
tive defense by way of amendment to his original
answer. Finally, he raised this apparently other-
wise applicable statutory defense improperly by a
motion for summary judgment. Although ordinar-
ily a court should freely allow amendment of an
answer pursuant to GCR 1963, 118, so as to pre-
vent waiver of defenses according to GCR 1963,
111, the allowance of the amendment is within the
trial court's discretion. On remand, the court
should consider the fact that the defendant's ac-
tion had allowed the statute of limitations to run
against the plaintiff in a claim against the state
and the fact that the defendant, in his brief in
support of a motion for summary judgment, indi-
cated that this was a local road (and apparently
under the jurisdiction of the county) which would
certainly tend to mislead the plaintiff. Failure to
properly raise this defense where circumstances
existed which indicated plaintiff was prejudiced by
defendant's failure to properly and promptly raise
such an issue warrants reversal of the trial court's
grant of the improper motion for summary judg-
ment.

Reversed and remanded for proceedings not in-
consistent with this opinion.

T. M. Burns, J., concurred.

R. B. Burns, P. J. *(dissenting).* Regrettably, I

must dissent. The majority's attempt to reach a sympathetic result clearly misapplies too many rules of law.

The majority makes a crucial admission that must be emphasized: "Plaintiff should have brought an action against the state * * * the Legislature has provided that the plaintiff's remedy is an action against the state. MCLA 250.61; MSA 9.901." The statute could not be clearer:

"On and after January 1, 1960, the cost of constructing, improving and maintaining trunk line highways shall be met entirely by the state, and the counties, townships and incorporated cities and villages shall thereafter be relieved of all expenses and legal liabilities in connection therewith * * * ."

This Court has construed this statute in the context of a maintenance agreement between the state and a county (or city) in a manner so as to provide defendant herein with an absolute defense from liability. *Moyer v Wayne County Road Commission,* 52 Mich App 285; 217 NW2d 53 (1974), *Bennett v City of Lansing,* 52 Mich App 289; 217 NW2d 54 (1974).

Nevertheless, the majority feels constrained to create an involved and untenable procedural argument in order to defeat the plain intent and letter of the statute. The essence of this argument is that defendant "misled" and prejudiced plaintiff by filing an improper motion which somehow "allowed" the statute of limitations to run.

The truth is that *plaintiff* allowed the statute to run; defendant would not even be a party to this lawsuit if plaintiff had followed MCLA 250.61; MSA 9.901 and brought her action against the state. Also significant is the majority's recital of part of the chronology of proceedings below:

"[O]n October 5, 1972 defendant filed another motion for summary judgment, on the basis that plaintiff had failed to state a claim upon which relief can be granted. GCR 1963, 117.1, 117.2(1). The motion indicated that it was based on MCLA 250.61; MSA 9.901. No affidavit was attached indicating precisely what defense was relied on, and accordingly the motion was denied."

In October, 1972, the statute of limitations had three months to run in this case. Defendant's motion, whether or not technically proper, certainly put plaintiff on notice as to the requirements of MCLA 250.61; MSA 9.901 well before the running of the statute of limitations.[1]

The majority elevates to the critical the difference between the motion for accelerated judgment under GCR 1963, 116 and that for summary judgment under GCR 1963, 117. This Court has repeatedly stated, however, that the "technical impropriety of the form of the order is not reversible error. *Bloss v Williams,* 15 Mich App 228; 166 NW2d 520 (1968), *Curry v Detroit,* 49 Mich App 240, 241 fn 1; 211 NW2d 559, 560 fn 1 (1973)". *Buddy v Department of Natural Resources,* 59 Mich App 598, 599 fn 1; 229 NW2d 865, 866–867 fn 1 (1975). Similarly, "[a]n incorrectly labeled motion is considered as if correctly labeled, absent prejudice to the other party. *Cibor v Oakwood Hospital,* 14 Mich App 1; 165 NW2d 326 (1968); 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 337". *Birch Run Nursery v Jemal,* 52 Mich App 23, 24 fn 1; 216 NW2d 488, 489 fn 1 (1974). This defendant bears no responsibility for any prejudice suffered by plaintiff

---

[1] It is probable that the very denial of this motion on the ground of failure to include a particularized supporting affidavit was itself erroneous. The motion was apparently brought under GCR 1963, 117.2(1), and the court rule only mandates such affidavits for motions brought under GCR 1963, 117.2(3).

through the running of the statute of limitations. It should also be emphasized that this Court has affirmed the grant of summary judgment in the precise context presented herein. *Bennett v City of Lansing, supra.*

Finally, and most objectionably, the majority encourages the trial court on remand to consider as a waiver the defendant's understandable failure to foresee the rigidity of today's opinion. The majority also admits (as it must) that "ordinarily a court should freely allow amendment of an answer pursuant to GCR 1963, 118, so as to prevent waiver of defenses according to GCR 1963, 111 * * * ".

I feel as much sympathy as does the majority for plaintiff's tragic loss. I cannot, however, ignore the established rules of pleading and ignore a statute of this state. I would affirm.