KILLEEN v DEPARTMENT OF TRANSPORTATION

Docket No. 77031. Submitted January 8, 1985, at Lansing. Decided
April 21, 1986. Leave to appeal applied for.

Robert P. Becker died after sustaining injuries in an accident
wherein his motor vehicle crossed the center line of Ballenger
Highway in Genesee County and rolled down an embankment.
Plaintiff, George Killeen, as personal representative of the
estate of the decedent, filed a claim in the Court of Claims
against defendant, Department of Transportation. Plaintiff al-
leged that the state assumed jurisdiction of the highway in
1968 and 1969, in connection with the construction of the I-69
and I-75 interchange in Genesee County, and that defendant's
negligent design and construction of the portion of the highway
involved in the accident was the proximate cause of decedent's
death. The Court of Claims, Thomas L. Brown, J., granted
summary judgment in favor of defendant, after ruling that the
county, and not the state, had jurisdiction of the highway at
the time of the accident. Plaintiff appealed. *Held:*

1. The state did not have jurisdiction of the highway at the
time of decedent's accident. Therefore, as a matter of law,
defendant cannot be subject to tort liability. The Court of
Claims properly granted summary judgment in favor of defen-
dant.

2. The state has statutory authority to contract for and
perform work on any highway, road or street in Michigan. The
Court of Appeals therefore rejected plaintiff's claim that defen-
dant acted ultra vires when it performed work on Ballenger
Highway.

3. Defendant did not create an intentional nuisance in fact as
alleged by plaintiff.

Affirmed.

W. J. GIOVAN, J., dissented. He would hold that any person
sustaining bodily injury by reason of a failure of a governmen-
tal agency to properly maintain and repair a highway may

REFERENCES

Am Jur 2d, Highways, Streets, and Bridges §§ 342-356.
See the annotations in the ALR3d/4th Quick Index under High-
ways and Streets § 7.

recover damages for his injury if, inter alia, he establishes that his injury was causally related to the government agency's breach of its duty to maintain the highway at the time the governmental agency had jurisdiction. The governmental agency's jurisdiction need not extend to the time of injury. He would reverse and remand for further proceedings.

OPINION OF THE COURT

1. HIGHWAYS — GOVERNMENTAL IMMUNITY.

The governmental immunity act limits liability for highway maintenance to the governmental unit having jurisdiction over the road at the time of the injury (MCL 691.1402; MSA 3.996[102]).

2. HIGHWAYS — JURISDICTION — LIABILITY.

The duty to maintain a highway in reasonable repair so that it is reasonably safe and convenient for public travel is exclusive with the governmental unit having jurisdiction over that highway and cannot be superimposed upon other governmental agencies; therefore, a governmental unit may not incur liability for negligent repair and maintenance of a highway outside its jurisdiction (MCL 691.1402; MSA 3.996[102]).

DISSENT BY W. J. GIOVAN, J.

3. HIGHWAYS — NEGLIGENCE — REPAIR.

*Any person sustaining bodily injury by reason of a failure of a governmental agency to properly maintain and repair a highway may recover damages for his injury if, inter alia, he establishes that his injury was causally related to the governmental agency's breach of its duty to maintain the highway at the time the governmental agency had jurisdiction; the governmental agency's jurisdiction need not extend to the time of injury (MCL 691.1402; MSA 3.996[102]).*

*John J. Kalo,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Carl K. Carlsen* and *Jerrold H. Keyworth,* Assistant Attorneys General, for the defendants.

Before: ALLEN, P.J., and J. H. GILLIS and W. J. GIOVAN,* JJ.

ALLEN, P.J. Plaintiff appeals from a summary judgment rendered by the Court of Claims on the basis that the defendant was immune from suit.

Plaintiff's decedent died as a result of injuries he sustained on November 4, 1980, when his motor vehicle crossed the center line of Ballenger Highway in Genesee County and rolled down an embankment. Asserting a claim of negligent design and construction, the complaint alleged that in 1968 and 1969, in connection with the construction of the I-69 and I-75 interchange in Genesee County, the state assumed jurisdiction of the highway and that the "superelevation" of that portion of the highway, which was constructed and designed by the state, was the proximate cause of decedent's death.

Defendant moved for summary judgment, claiming that it was immune from suit as a matter of law because the county, not the state, had jurisdiction of the roadway at the time of the accident. Plaintiff filed a responsive affidavit alleging that, in 1953-54 and in 1968-69, the state had assumed jurisdiction over the roadway for the purpose of implementing expressway projects and during those periods had relocated, redesigned and reconstructed the highway prior to restoring jurisdiction to the county.

MCL 691.1407; MSA 3.996(107) provides:

Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise pro-

* Circuit judge, sitting on the Court of Appeals by assignment.

vided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed.

The design, construction, and maintenance of a highway constitute the exercise or discharge of a governmental function. *Thomas v Dep't of State Highways,* 398 Mich 1; 247 NW2d 530 (1976). See also *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567; 363 NW2d 641 (1984). The only statutory exception to governmental immunity under which the state can be liable is found in MCL 691.1402; MSA 3.996(102), which provides in part:

> Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. Any person sustaining bodily injury or damage to his property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him from such governmental agency.

Relying on *Potes v Dep't of State Highways,* 128 Mich App 765; 341 NW2d 210 (1983), the trial court granted summary judgment for defendant. The facts of the *Potes* case are virtually identical to those in the case at bar, involving the same stretch of highway, the same kind of single vehicle accident, and the same allegations of negligence against the Department of State Highways. As here, the plaintiff contended that the state was liable for design and construction defects created by the state before it relinquished jurisdiction of the highway to the county. The *Potes* Court, affirming accelerated judgment in favor of the Department of State Highways, construed MCL

691.1402; MSA 3.996(102) as limiting liability to the governmental agency having jurisdiction of the road *at the time of the accident.*

> In the same spirit, we view that statutory exception as parting the immunity curtain only as to the governmental unit having jurisdiction of the subject roadway at the time of the accident. Application of this rule is compatible with the language of MCL 224.21; MSA 9.121, which places the duty to keep county roads in reasonable repair exclusively upon the counties. See *Mullins v Wayne County,* 16 Mich App 365; 168 NW2d 246 (1969), lv den 382 Mich 791 (1969). To hold two governmental units responsible for correcting design or construction defects could result in confusion and inefficiency. [128 Mich App 769.]

We agree with *Potes* and disagree that somehow or other liability might attach to the state even though maintenance and repair of the highway had been under the jurisdiction of the county for upwards of ten years before the accident. It is undisputed that, at the time of the accident, Ballenger Highway was a county primary road, under the exclusive jurisdiction of the Genesee County Road Commission. Contrary to the clear words of the statute that liability is imposed on governmental agencies which fail "to keep any highway under its jurisdiction in reasonable repair," the dissent argues that liability extends to a governmental agency which some time in the past had jurisdiction. We don't construe the statute that broadly. Had the Legislature intended to impose liability on governmental units which at one time had jurisdiction over a highway but did not have such jurisdiction at the time of the accident, the Legislature could easily have worded the statute to read "failure . . . to keep any highway which *at*

*any time* was under its jurisdiction in reasonable repair."

The argument that two authorities could, for purposes of determining liability for an unsafe highway, both have jurisdiction over the road was rejected in *Austin v Romulus,* 101 Mich App 662; 300 NW2d 672 (1980), lv den 411 Mich 955 (1981). Similar results have been reached in *Furness v Public Service Comm,* 100 Mich App 365; 299 NW2d 35 (1980), *Summerville v Kalamazoo Road Comm'rs,* 77 Mich App 580; 259 NW2d 206 (1977); lv den 402 Mich 924 (1978); *Bennett v Lansing,* 52 Mich App 289; 217 NW2d 54 (1974), lv den 399 Mich 840 (1977).

For similar reasons we disagree with plaintiff that *Hargis v Dearborn Heights,* 34 Mich App 594; 192 NW2d 44 (1971), lv den 386 Mich 751 (1971), should control. As noted in *Potes,* the factual situation in *Hargis* arose prior to the effective date of MCL 691.1402; MSA 3.996(102). The dissent considers that distinction irrelevant because the statutes in effect at the time of *Hargis* were similar to MCL 691.1402; MSA 3.996(102). We disagree. That rationale completely ignores the recent line of cases beginning with *Bennett* and ending with *Austin, supra,* which expressly reject the theory that two authorities have jurisdiction for determining liability of an allegedly unsafe highway. Further, we conclude that, to the extent that *Hargis* conflicts with *Potes, Hargis* is rejected. Accordingly, we find no error as to issue I raised by plaintiff on appeal.

In issue II, plaintiff argues that, when the state became involved in the relocation of Ballenger Highway in the 1950s and late 1960s, the statute under which the state acted, 1957 PA 262, only permitted the county to contract with the state regarding state trunklines, and since Ballenger

Highway was not then a state trunkline highway, the state acted ultra vires and immunity does not attach. *McCann v Michigan,* 398 Mich 65; 247 NW2d 521 (1976). Contrary to plaintiff's claim, 1957 PA 262, in what is now MCL 247.661(1)(e); MSA 9.1097(11)(1)(e), specifically grants the state the authority to perform work on any highway, road, or street:

> (g) The state highway commissioner may enter into agreements with boards of county road commissioners and with incorporated cities and villages to perform work on any highway, road or street, and such agreements may provide for the performance by any of the contracting parties of any of the work contemplated by such contract including engineering services and the acquisition of rights-of-way in connection therewith, by purchase or condemnation by any of the contracting parties in its own name, and such agreements may provide for joint participation in the costs, but only to the extent that the contracting parties are otherwise authorized by law to expend moneys on such highways, roads or streets.

It is clear that the state was discharging a governmental function at the time it entered into the contract and that its acts were not ultra vires, as plaintiff maintains.

In issue III, plaintiff argues that count II of the first amended complaint alleges that defendant created an intentional nuisance in fact which, under Michigan law, is not barred by governmental immunity. Citing *Madajski v Bay County Dep't of Public Works,* 99 Mich App 158; 297 NW2d 642 (1980), plaintiff contends that jurisdiction is not an element necessary for a governmental unit to be held liable for intentional nuisance in fact. Unlike the instant case, *Madajski* involved immunity given a county under MCL 250.61; MSA 9.901 for

deficiencies in the maintenance of a portion of state highway which the county had contracted with the State Highway Commission to maintain. In that case jurisdiction had been retained by the state. In the instant case there is no contract and there is no jurisdiction retained by the state. Accordingly, we find no liability under count II.

Affirmed. No costs, a public question being involved.

J. H. Gillis, J., concurred.

W. J. GIOVAN, J. *(dissenting).* I respectfully dissent, as I cannot concur with the result of *Potes v Dep't of State Highways,* 128 Mich App 765; 341 NW2d 210 (1983).

The first sentence of MCL 691.1402; MSA 3.996(102) imposes the duty of reasonable repair on a governmental agency having jurisdiction over a highway. The second sentence is that which allows a right of action for violation of that duty. It provides that "Any person sustaining bodily injury . . . by reason of *failure of any governmental agency* to keep any highway *under its jurisdiction* in reasonable repair . . . may recover the damages suffered by him from *such governmental agency."* I do not read the words "such governmental agency," as apparently the *Potes* Court did, as referring exclusively to an agency that had jurisdiction over the highway at the time of the injury. The antecedent of "such governmental agency," rather, is "any governmental agency" which failed to keep a highway under its jurisdiction in reasonable repair.

Stated another way, the statute does not employ the term "jurisdiction" to identify a temporal circumstance that will render an injury actionable. It is used, rather, to identify the relationship of a governmental agency to a highway that will im-

pose on the agency the duty of maintenance. Where the violation of that duty is causally related to an injury, as is alleged in the case at bar, I see nothing in the language of the statute disclosing a purpose to insulate a governmental agency from liability for the consequences of improper maintenance by nothing more than the transfer of jurisdiction over the highway to another agency prior to the occurrence of the injury.

The *Potes* Court found support for its conclusion in *Bennett v Lansing,* 52 Mich App 289; 217 NW2d 54 (1974), lv den 399 Mich 840 (1977); *Austin v Romulus,* 101 Mich App 662; 300 NW2d 672 (1980), lv den 411 Mich 955 (1981); and *Summerville v Kalamazoo Road Comm'rs,* 77 Mich App 580; 259 NW2d 206 (1977), lv den 402 Mich 924 (1978), all of which declined to find that more than one governmental unit had jurisdiction over a particular road for the purposes of MCL 691.1402; MSA 3.996(102). To say, however, that only one agency can have jurisdiction over a road at any given time is not the same as saying that two governmental agencies which successively have jurisdiction over a road cannot each be responsible for their separate failures to perform the duty of reasonable maintenance imposed by the statute.

In *Hargis v Dearborn Heights,* 34 Mich App 594; 192 NW2d 44 (1971), lv den 386 Mich 751 (1971), the Court held that the Wayne County Road Commission was not necessarily exempt from liability for negligent maintenance of a bridge by its relinquishment of jurisdiction over the bridge to the City of Dearborn Heights, the death in that case occurring after the transfer of jurisdiction to the city. It should be noted that the Court reached that conclusion notwithstanding a provision in the statute under consideration which provided that, upon relinquishment of jurisdiction, "jurisdiction

and control of such road, or part thereof, shall revert to the township or municipality within which the same is situated, and the county shall be relieved of the responsibility therefor."[1] As against the county's claim that this provision obviated any liability for an injury which occurred after the transfer of jurisdiction, the Court said:

> Nor does the transfer of jurisdiction of the bridge relieve the county from liability for the consequences of its negligent acts of commission or omission before the transfer of jurisdiction. In declaring that the county "shall be relieved of responsibility" for the bridge upon relinquishing jurisdiction, the Legislature focused on the continuing responsibility to keep the bridge in repair, reasonably safe, and convenient for public travel. It was not intended thereby to relieve the county of responsibility for damages suffered after the transfer of jurisdiction that were caused by a lapse in the performance of the county's statutory duty which occurred before jurisdiction was relinquished. [*Hargis, supra,* p 601.]

The *Potes* Court distinguishes the *Hargis* case on the basis that "its factual situation accrued prior to the effective date of the governmental immunity act, MCL 691.1401 *et seq.;* MSA 3.996(101) *et seq.*" *Potes, supra,* pp 769-770. That distinction avoids the issue, since it was a provision of the governmental immunity act that was under construction in *Potes,* as it is here. The *Hargis* case presented an issue of statutory interpretation that was parallel to that in *Potes* and its holding cannot be dismissed as irrelevant on the sole basis that its facts preceded the enactment of the statute under consideration here and in *Potes.* Indeed, the provisions of MCL 691.1402; MSA

[1] MCL 224.18; MSA 9.118.

3.996(102) are similar to those of the statutes that were applicable in the *Hargis* case.[2]

Finally, under the construction of the statute urged by defendant, a person suffering injury because of a negligently maintained highway could conceivably be deprived of any remedy whatsoever. Under MCL 691.1403; MSA 3.996(103) the liability of a governmental agency for injury caused by a defective highway is conditioned upon a reasonable opportunity to learn of and repair the defect, the opportunity being conclusively presumed in the event of a readily observable defect that exists for at least 30 days. If a person should suffer injury because of a highway defect within 30 days after jurisdiction of the highway is transferred to an agency, that agency, if without notice of the defect, would not be liable for the injury. But neither would the agency that created or tolerated

---

[2] As noted in footnote 4 of *Hargis v Dearborn Heights, supra,* the county's liability arose under MCL 224.21; MSA 9.121:

> It is hereby made the duty of the counties to keep in reasonable repair, so that they shall be reasonably safe and convenient for public travel, all county roads, bridges, and culverts that are within their jurisdiction and under their care and control and which are open to public travel. The provisions of law respecting the liability of townships, cities, villages and corporations for damages for injuries resulting from a failure in the performance of the same duty respecting roads under their control, shall apply to counties adopting such county road system.

The liability of the city, in turn, was predicated on MCL 242.1; MSA 9.591 (repealed 1964 PA 170, § 14, effective July 1, 1965):

> Any person or persons sustaining bodily injury upon any of the public highways or streets in this state, by reason of neglect to keep such public highways or streets, and all bridges, sidewalks, cross walks and culverts on the same in reasonable repair, and in condition reasonably safe and fit for travel by the township, village, city or corporation whose corporate authority extends over such public highway, street, bridge, sidewalk, cross walk or culvert, and whose duty it is to keep the same in reasonable repair, such township, village, city or corporation shall be liable to and shall pay to the person or persons so injured or disabled just damages, to be recovered in an action of trespass on the case before any court of competent jurisdiction.

the defect be liable, having relinquished jurisdiction prior to the occurrence of the injury. I do not believe that the Legislature contemplated such a captious result.

To be sure, as the *Hargis* case suggests, the lapse of time between the transfer of jurisdiction over a highway and a subsequent accident could exculpate the transferring agency (assuming its negligence) under the facts of this or any other given case.[3] However, for the reasons stated, I disagree with the view of *Potes* and the trial court that MCL 691.1402; MSA 3.996(102) demands that the examination into the liability of an agency that has had the obligation to keep a highway in reasonable repair is ended with the bare showing that it transferred jurisdiction over the highway at any time prior to the occurrence of injury.

I would reverse and remand the action for further proceedings.

---

[3] It seems to me that the principles governing that question should be like those that apply in determining the liability of a vendor of real property who parts with title, possession and control of the property. Those principles are discussed in Justice LEVIN's opinion in *Christy v Prestige Builders, Inc,* 415 Mich 684; 329 NW2d 748 (1982).